## WELLS and others *vs.* THE RAHWAY WHITE RUBBER COMPANY and others.

1. A majority of the directors of a corporation, in the absence of any regulation in the charter, is a quorum, and a majority of such quorum when convened, can do any act within the power of the directors.

2. The minutes of a corporation need not be entered up in the handwriting of the secretary; it is sufficient if they are entered under his direction and approved by him. And a resolution regularly made at a corporate meeting, if proven, is binding, though never entered upon the minutes.

3. A mortgage or other transfer of the property of a corporation, is void if made when the corporation is insolvent, or after it has suspended business, although the corporation was solvent and had not suspended business when the resolution was passed authorizing the execution of such mortgage or transfer.

4. The object of the "act to prevent frauds by incorporated companies," is to prevent any corporation, when insolvent, or in contemplation of insolvency, from preferring any of its creditors.

This cause was argued upon bill, answers, replications, and proofs.

*Mr. Dutcher*, for complainants.

*Mr. Stone*, for defendant, National Bank of Rahway.

*Mr. Berry*, for defendants, Pfeizer & Co.

THE CHANCELLOR.

The defendants, the Rahway White Rubber Company, on the 14th of August, 1867, executed a mortgage to the complainants as trustees for the holders of bonds to the amount of $60,000, issued, or to be issued by them. This mortgage was on property at Rahway, and was on the same day proved and recorded in the clerk's office of Union county, in the records of mortgages. It included the real estate of the company and the fixed machinery upon it, and also a large amount of personal estate, an inventory of which was annexed to the mortgage. The real estate and fixed machinery had been mortgaged to the defendants, the National Bank of Rahway, to secure the payment of $15,000 and interest. For the foreclosure of that mortgage a suit was pending in this court, but whether a decree had been made on it prior to the mortgage to these trustees, does not appear. Under the decree in that suit, the real estate and fixed machinery were sold by the sheriff to the bank, on the 31st of October, 1867, for $10,000. The bill in this suit, is for the foreclosure and sale of the personal property in the mortgage to the complainants; all the real estate and fixtures having been sold by the sheriff. The bank is made a defendant, because, on the 2d day of November, 1867, it obtained a judgment against the company in the Supreme Court for $5766.90, the balance of its mortgage debt, and issued an execution by which the mortgaged personal property was levied upon. The defendants, Pfeizer & Co., obtained a judgment against the company in the Union county Circuit Court, on the 5th day of August, 1867, on which an execution was issued on the 5th of September following, and a levy made on said personal property. The personal property remained in possession of the company until the 31st day of October, 1867, when the complainants, as trustees, took possession of it, on account of default made by the company in payment of the mortgage debt.

The complainants claim that, as the mortgage to them was

prior to the issuing of the executions and the levies on them, upon the two judgments of the bank and of Pfeizer & Co., the lien of their mortgage is first. These defendants claim that the mortgage is void as to them, on the ground that it was executed without authority of the board of directors, and because it was executed after the company was insolvent, and had suspended their ordinary business for want of funds.

The defence of want of authority to execute the mortgage, does not appear to me to be sustained. Besides the presumption arising from the fact that the mortgage is executed under the corporate seal, and signed by the president and attested by the secretary of the company, it appears by the minutes that its execution was authorized by a meeting held on the 21st of February, 1867. At this meeting, three of the five directors were present, and although there is some proof that the entry is incorrect in stating that all three concurred in the resolution, yet it appears that two did concur unconditionally, and as of five directors three are a quorum, and two a majority of the three, the resolution must be taken as valid and binding. The objection to the regularity of the entry in the minute book, that it was made by a stranger, and never read to and approved by the board, is obviated by the fact that the entry was made under the direction of the secretary, from a minute made by him at the time on a loose sheet of paper, and after entry was compared with this sheet by him. It is not necessary that the minutes of a corporation should be written up by the secretary in his own handwriting, or that they should be approved by the board. And in fact, if it was shown that the resolution had been passed by the board when lawfully assembled, it would be valid, although never entered upon the minutes.

The other ground, that the mortgage is void on account of the insolvency of the company, and their having suspended business for want of funds, must be next considered. This mortgage was given on the 14th of August, 1867. That the resolution under which it was executed was passed in February, or that another mortgage had been executed some

time before the date of this, which was given up and destroyed because invalid, or that some of the bonds may have been issued and paid for before that date, is of no consequence. The second section of the "act to prevent frauds by incorporated companies," (*Nix. Dig.* 405,) on which these defendants rely, makes void all sales or transfers of property by corporations, after they become insolvent or suspend business, or made in contemplation of insolvency. The time referred to by the words of the act, and which must be fixed from the object of the act, is the actual time of the sale or transfer. Else, mere intentions or promises to prefer favored creditors of corporations, would repeal the act so far as directors and their friends are concerned. And the act was no doubt intended specially to protect the general creditors from such favored preferences.

If the construction of the act would permit us to look to the time of the execution of the first mortgage, or of the issue of the bonds, the evidence on this point is so indefinite and unsatisfactory, that no decree could be founded on it. The evidence of the witnesses on this subject, who are the principal bondholder and his son, is evasive, and abounds with want of recollection of amounts, dates, and transactions, which they should recollect, or as to which their deficiency of memory could have been supplied by reference to means within their power. No court could be satisfied to make a decree which depended upon it. For aught that appears, most of the money advanced on these bonds by the persons to whom they were issued, and by whom they are held, may have been advanced after the date of the mortgage. In fact, from the manner of testifying by these witnesses, I am far from being satisfied that any money or valuable consideration was advanced upon the faith of these bonds, at all.

But the question now is, the situation of this company on the 15th of August, 1867. The whole of their real property and fixed machinery were mortgaged to the bank for $15,000. That mortgage was being foreclosed, and the decree must have been made at that time, or in a few days after, as the

property was sold on the 31st of October. All the remaining chattels of the company have since been sold, and did not bring sufficient to pay the residue of the debt to the bank. Pfeizer & Co. had obtained their judgment—it remained unpaid. A number of other judgments for considerable amounts, are set forth in the bill as since obtained, and the debts alleged to be due to the bonds outstanding, for which the complainants hold this mortgage, were then debts of the company. The facts, that a decree is had for the foreclosure and sale of all its real estate, including the factory and fixed machinery for carrying on the business; that a judgment at law is entered and not paid; that the coal and materials for manufacture are taken to pay workmen, though not conclusive, are strong and persuasive evidence of insolvency. My conviction is clear that the company was then insolvent. The testimony of the principal bondholder, Joshua Hannah, that he *considered* the property of the company worth $60,000, cannot be received as evidence. It shows no facts, but is his opinion only. And were it evidence, the disclosure upon cross-examination, that this opinion was not based upon any knowledge or estimate of the value of the company's property, but upon the fact that some one to whom he and the superintendent had been talking about the property and prospects of the company, had made such offer, without other knowledge, would have destroyed its value as testimony. The company had also suspended their ordinary business, manufacturing or experimenting on India rubber, and evidently for want of funds.

If the company were insolvent, or had suspended their ordinary business for want of funds, this mortgage is void as against creditors, by the provisions of the act, and this without reference to the question whether the bondholders knew of the insolvency. I concur in the views and reasoning of Chancellor Williamson, in *Holcomb* v. *The New Hope and Delaware Bridge Co.*, 1 *Stockt.* 458, that the object of this statute was to prevent a company, that was either insolvent, or in contemplation of insolvency, from preferring some

creditors to others, by a transaction like this mortgage; and that the proviso in the second section " was intended to protect a stranger, who, in good faith and in total ignorance of the situation of the company, makes a purchase of its property, and pays down the consideration money. But all precedent creditors of the company must stand on the same footing." And even did I not concur in these views, I would be bound by the authority of his decision in that case.

These views of the facts and the law, constrain me to hold that the mortgage to the complainants is void against the bank, and Pfeizer & Co., and other creditors of the company.